# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

In re:

HAEMACURE CORPORATION,

Debtor.

_____/

Chapter 11

Case No. 8:10-bk-00359-KRM

*Emergency Relief Requested*

## DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF ITS ASSETS, (II) ESTABLISHING PROCEDURES FOR THE ASSUMPTION AND/OR ASSIGNMENT BY THE DEBTOR OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (III) APPROVING MINIMUM OVERBID AMOUNT AND AN EXPENSE REIMBURSEMENT AMOUNT, (IV) APPROVING FORM AND MANNER OF NOTICE OF BIDDING PROCEDURES, AND (V) SETTING OBJECTION DEADLINES

HAEMACURE CORPORATION, as debtor and debtor in possession (the "**Debtor**"), by and through its undersigned attorneys, respectfully requests the entry of an order by this Court (i) approving bidding procedures in connection with the sale of substantially all of its assets to Angiotech Pharmaceuticals, Inc., (ii) establishing procedures for the assumption and/or assignment by the Debtor of certain executory contracts and unexpired leases to which the Debtor is a party, (iii) approving a minimum overbid amount and an expense reimbursement amount in connection with such sale, (iv) approving the form and manner of notice of the bidding procedures, and (v) setting deadlines for objections to the sale. In support of this Motion, the Debtor states as follows:

## A. Jurisdiction and Venue

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. § 1408. The statutory predicates for the

relief sought in this Motion include 11 U.S.C. §§105, 363, 365, 1107 and 1108 and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure.

## B. General Background

2.     On January 8, 2010 (the "**Petition Date**"), the Debtor filed with this Court its Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code.

3.     The Debtor continues to operate its business and manage its property as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4.     No previous application for the relief sought herein has been made by the Debtor to this Court or any other court.

5.     The Debtor is a wholly-owned subsidiary of Haemacure Corporation, a corporation duly incorporated under the Canada Business Corporations Act with its head office located in Montreal, Quebec (Canada) (the "**Parent**" and together with the Debtor, hereinafter collectively referred to as "**Haemacure**").

6.     Haemacure is a specialty bio-therapeutics company developing high-value human biological adhesives, hemostats and therapeutic proteins for commercialization. Haemacure's research and development effort is driven by its proprietary, high-yield plasma protein extraction technology to develop next-generation products, including surgical hemostats.

7.     Haemacure's lead product candidate, *Hemaseel®HMN*, is a human-derived fibrin sealant planned to enter pivotal Phase II/Phase III clinical trials. Fibrin sealant is a biological adhesive with sealing and hemostatic properties which are essential to wound healing. Haemacure's second product candidate, *Hemaseel®Thrombin*, is a hemostatic agent now in pre-clinical stage, and consists of human thrombin, a component of its fibrin sealant.

8.     Haemacure's product development activities will focus on the use of its fibrin sealant in adhesion prevention, aesthetics, combination with biomaterials, drug delivery,

2

regenerative medicine, skin graft fixation for burn injuries, surgical hemostasis and wound healing. Haemacure has also identified eleven specialty proteins and enzymes in one of its two plasma fractions and seeks to advance these specialty proteins through partnerships with pharmaceutical and biotechnology companies.

9. The Debtor operates a manufacturing facility of approximately 52,000 square feet located at 600 Tallevast Road, Suite 201, in Sarasota, Florida.

10. As of November 30, 2009, the Debtor's balance sheet reflected total assets of approximately $9 million and total liabilities of approximately $47 million.

11. The Debtor, the Parent and Angiotech Pharmaceuticals, Inc. (hereinafter "**Angiotech**" or the "**Purchaser**") are parties to that certain Senior Secured Convertible Bridge Loan dated as of June 1, 2009 (the "**June 1 Agreement**"), as modified and amended by that certain Letter Agreement dated as of January 7, 2010 among Angiotech, Parent and the Debtor (the "**Letter Agreement**") and that certain Forbearance Agreement dated as of January 8, 2010 among Angiotech, Parent and the Debtor (the "**Forbearance Agreement**" and together with the June 1 Agreement and the Letter Agreement, collectively, the "**Credit Agreement**"). The Credit Agreement provided for initial loans to the Parent in the principal amount of U.S. $2,500,000 (which initial loans as described immediately below were guaranteed by the Debtor) and, as provided in the Letter Agreement and the Forbearance Agreement, additional loans to the Parent and the Debtor "solidarily" in a further principal amount of up to U.S. $1,000,000, upon and subject to the terms and conditions thereof. Prior to the commencement of this Chapter 11 case, Angiotech advanced a total principal amount of U.S. $2,683,000 under the Credit Agreement.

12. Pursuant to a certain Continuing, Absolute and Unconditional Guaranty dated as of June 1, 2009, the Debtor guaranteed the obligations of the Parent under the Credit Agreement (the "**Pre-Petition Guaranty**"). Pursuant to a Security Agreement also dated as of June 1, 2009

(the "**Pre-Petition Security Agreement**") in favor of Angiotech, the Debtor and the Parent, as grantors, granted Angiotech, as security for the obligations of the Parent under the Credit Agreement and the Debtor under the Pre-Petition Guaranty, a lien on and security interest in the Collateral (as described in the Pre-Petition Security Agreement), which constitutes substantially all of the assets of the Debtor.

13.     As of the Petition Date, the Parent was indebted to Angiotech under the Credit Agreement in the aggregate amount of not less than U.S. $2,683,000, plus interest, costs, expenses and other charges thereon (the "**Pre-Petition Indebtedness**"), which amounts are guaranteed by the Debtor under the Pre-Petition Guaranty. The Debtor is a co-borrower "solidarily" liable with the Parent for so much of the Pre-Petition Indebtedness advanced under the Letter Agreement and the Forbearance Agreement. In addition, by separate motion filed with the Court, the Debtor has requested this Court's approval of a debtor in possession financing facility from Angiotech in the total aggregate amount of approximately $214,000 for the initial six weeks following the Petition Date (the "**DIP Credit Facility**"). The foregoing obligations, together with, as of the Petition Date, all other indebtedness and other obligations of the Debtor under the Credit Agreement, including, but not limited to, fees, costs and expenses, and all amounts advanced and owing (and hereafter advanced and owing) under the DIP Credit Facility, are hereininafter referred to as the "**Loan Obligations**."

## C. Asset Purchase Agreement

14.     On January 11, 2010, the Debtor and the Purchaser, a corporation incorporated under the laws of the Province of British Columbia, executed a Purchase Agreement (the "**Purchase Agreement**"), which provides for the sale by the Debtor, and the purchase by the Purchaser, of substantially all of the assets (the "**Assets**") of the Debtor for a purchase price of $1,500,000 (the "**Purchase Price**") plus the assumption of certain liabilities of the Debtor. The

Purchase Price consists of (i) a credit against amounts owing to the Purchaser with respect to the Loan Obligations plus (ii) $100,000 in cash for payment of allowed claims of creditors of the Debtor (the "**Cash Amount**"). An executed copy of the Purchase Agreement is attached to this Motion as Exhibit A and is incorporated herein by this reference thereto.[1]

15.     The Debtor has determined that it would be in the best interests of its creditors and its estate to maximize value through a sale of the Assets pursuant to Section 363 of the Bankruptcy Code.   Absent such a sale, the Debtor would most likely be facing a liquidation under Chapter 7 of the Bankruptcy Code which would achieve far less for its creditors than a sale as a going concern.   As presently contemplated, the sale will be pursuant to Section 363 of the Bankruptcy Code, and the Debtor will propose a plan of liquidation providing for the distribution of the Cash Amount and any other available funds to its creditors.

## D.  Relief Requested

### *Bidding and Sale Procedures*

16.     This Motion is filed to seek approval of bidding procedures in connection with the sale of the Assets, including (a) approval of procedures for the submission of competing bids, and (b) approval of an expense reimbursement amount to the Purchaser.  Further, this Motion is filed to seek approval of the form and manner of notice of the bidding procedures.

17.     The Debtor believes that the bidding procedures set forth in this Motion will assist in determining the highest and best offer available to the Debtor for the sale of the Assets and the other transactions contemplated by the Purchase Agreement.   The Debtor believes that these procedures are favorable to the Debtor, its estate and creditors, and create a fair and level playing

---

[1]     In order to reduce photocopying and mailing costs, a copy of the Purchase Agreement is not being served on all parties listed in the Certificate of Service below.  Any party wishing to receive a copy of the Purchase Agreement may do so upon written request to undersigned counsel for the Debtor.

field for all interested bidders. The Debtor submits that these proposed procedures will satisfy the interests of all creditors in assuring that the Debtor will achieve the maximum value for the Assets and the other transactions contemplated by the Purchase Agreement.

18.     The Debtor requests that the Court conduct a hearing on this Motion, as soon as practicable, to consider entry of an order approving the bidding procedures set forth herein and approving the form and manner of notice with respect thereto (the "**Bid Procedures Order**").

19.     The Debtor requests that this Court approve the following procedures (the "**Bid Procedures**") for the submission and consideration of any written competing bid ("**Bid**") by any competing bidder ("**Bidder**") for the Assets:

a)      By no later than two (2) business days after the date of entry of the Bid Procedures Order, the Debtor will file with the Court, and serve notice thereof on interested parties as required by the Bid Procedures Order and the Bankruptcy Code, a motion to approve the transactions contemplated by the Purchase Agreement (the "**Sale Motion**"), which Sale Motion will seek the Court's entry of the Sale Order (as defined in the Purchase Agreement), including approval of the Purchase Agreement and of the Debtor's performance under the Purchase Agreement consistent with the terms, conditions and dates set forth in the Bid Procedures Order.

b)      By no later than twenty-five (25) days following the hearing on this Motion, the Court will conduct a hearing (the "**Sale Hearing**") to consider approval of the Sale Motion and the Purchase Agreement and any higher or better offers submitted in accordance with the procedures set forth in the Bid Procedures Order.

c)      Any Bidder must deliver a Bid for the Assets by no later than 5:00 p.m. (Eastern Standard Time) on the day which is two (2) business days prior to the date of the Sale Hearing (or such later date agreed to by the Debtor) (the "**Bid Deadline**"), to the following parties: (i) Haemacure Corporation, Attn: Gilles Lemieux, c/o 215 Redfern Avenue, Suite 100, Montreal, Quebec, Canada H3Z 3L5 (Fax No.: 514/282-3358); (ii) counsel to the Debtor, Charles A. Postler, Esq., Stichter, Riedel, Blain & Prosser, P.A., 110 E. Madison Street, Suite 200, Tampa, Florida 33602 (Fax No.: 813/229-1811); (iii) counsel to the Purchaser, G. Christopher Meyer, Esq., Squire, Sanders & Dempsey, L.L.P., 4900 Key Tower, 127 Public Square, Cleveland, Ohio 44114 (Fax No.: 216/479-8780); (iv) the Office of the United States Trustee, Attn: Theresa Boatner, Timberlake Annex, 501 East Polk St., Suite 1200, Tampa, Florida 33602 (Fax No. 813/228-2303); and (v) counsel to any committee appointed in this case. The Debtor will

file a notice with the Court at least one (1) day prior to the date of the Sale Hearing of the Bids received, and will serve such notice, by electronic mail transmission, on the above parties and counsel to all Bidders.

d)   Prior to receipt by a prospective Bidder of any information (including business and financial information and access to the Debtor) from the Debtor, each such Bidder will be required to execute a confidentiality agreement in form and content acceptable to the Debtor.

e)   A Bid shall include the following:

i)   A copy of the initial written purchase offer in the form of an asset purchase agreement, executed by such Bidder, in substantially the form of the Purchase Agreement (the "**Bidder's Agreement**"); provided, however that any Bidder's Agreement which contains terms different from the Purchase Agreement must be black-lined to show any changes made by such Bidder to the form of the Purchase Agreement, and must be signed by such Bidder and be subject to acceptance by the Debtor solely by its execution thereof and necessary Court approval. The Debtor may accept modifications to the Purchase Agreement as submitted by a Bidder who otherwise complies with the Bid Procedures if the Debtor determines, in the exercise of its business judgment, that the proposed modifications result in a higher and better offer for the Assets. The Debtor shall promptly furnish a copy of the Purchase Agreement in Microsoft Word format to any Bidder requesting a copy.

ii)   A statement that specifically sets forth the extent to which the Bid is higher and better than the offer set forth in the Purchase Agreement.

iii)   A designation of any executory contracts or unexpired leases such Bidder desires the Debtor to assume and/or assign to it (the "**Designated Contracts**").

iv)   A purchase price which is cash only (unless otherwise agreed by the Debtor).

v)   A designation of those liabilities of the Debtor such Bidder intends to assume.

vi)   Relevant background and financial information reasonably satisfactory to the Debtor (including without limitation the latest available audited and unaudited financial statements) demonstrating the Bidder's financial ability to close and to consummate an acquisition of the Assets, such as (1) evidence of the Bidder's ability to assume or satisfy the terms and obligations

7

of the Bidder's Agreement, pay the purchase price provided for therein and provide adequate assurance of future performance as to any Designated Contracts pursuant to Section 365 of the Bankruptcy Code and/or (2) an unconditional lending commitment from a recognized financial institution or cash sources in the amount of the Bid.

vii)    A good faith deposit in immediately available funds in the amount of $150,000 (the "**Bid Deposit**"), which shall be made payable to and delivered to Stichter, Riedel, Blain & Prosser, P.A. ("**SRBP**"), counsel to the Debtor, by no later than the Bid Deadline (or such later date agreed to by the Debtor). The Bid Deposit shall be deposited into a non-IOTA interest-bearing trust account maintained by SRBP. Such Bid Deposit will be non-refundable to the Bidder in the event such Bidder's Bid is approved by the Court at the Sale Hearing as the highest and best offer and such Bidder fails to close on the purchase of the Assets for any reason. The Bid Deposit will be applied against the purchase price at the closing. Within five (5) days following the entry of the Sale Order, SRBP will return the Bid Deposit (inclusive of any earned interest) of any Bidder (except the Backup Bidder) that is not selected as having the highest and best offer at the Sale Hearing.

f)    An auction (the "**Auction**") to consider any competing bids in respect of the Assets will be held at the Court immediately preceding the Sale Hearing. Prior to the Auction, the Debtor will inform the Court of the differences between any Bids and the Purchase Agreement, and recommend to the Court the offer that the Debtor considers to be the highest and best offer to the Debtor's estate for the Assets, after taking into account all aspects of the Bids and the Purchase Agreement (including, without limitation, the amount of the purchase price, the method and timing of the payment of the purchase price, conditions to closing, the time for closing, the representations, warranties and covenants to be provided by the Debtor, and the indemnification obligations of the Debtor). All potential Bidders or their authorized representatives must be present at the Auction and the Sale Hearing. The Court will determine the highest and best offer at the Sale Hearing.

g)    The initial Bid must provide for a purchase price for the Assets of $100,000 above the $1,500,000 Purchase Price offered by the Purchaser plus the amount of the liabilities of the Debtor to be assumed by the Purchaser. The Purchaser shall be entitled to submit further bids at the Auction. All subsequent higher Bids above the initial Bid (including any subsequent Bid which may be made by the Purchaser) must be in incremental increases of at least $50,000 and be payable in cash (the "**Overbid Amount**").

h)     Any Bid shall not be contingent upon receipt of financing or due diligence past the Bid Deadline.

i)     Any Bidder shall provide satisfactory evidence (as determined by the Debtor) that it is (i) financially able to consummate the transaction contemplated by such Bid and (ii) able to consummate the transaction on the date and on the terms contemplated by the Bidder's Agreement.

j)     Any Bid shall not contain any conditions precedent to such Bidder's obligation to purchase the Assets and assume and perform any liabilities to be assumed, other than as may be included in the Purchase Agreement.

k)     Any Bid shall set forth (1) any applicable governmental, regulatory, or other approvals and any applicable consents that would be required to be obtained were the Bidder to be the successful Bidder, (2) all actions taken to obtain such approvals or consents, (3) any approvals or consents obtained, and (4) the Bidder's best estimates as to the likelihood and timing of any such approvals or consents.

l)     If any Bid does not conform to all of the requirements set forth above, such Bid will not be considered by the Court or be admissible at the Sale Hearing, unless otherwise agreed by the Debtor in its sole discretion.

m)     The Court shall register the second highest Bid and Bidder (the "**Backup Bidder**"), whose Bidder's Agreement shall be a binding contract with the Debtor and shall close in the event the successful Bidder fails to consummate the acquisition of the Assets in accordance with the provisions described above and in the Sale Order. Any closing with the Backup Bidder shall occur within five (5) days of notification that the successful Bidder failed to close.

n)     Except for the Purchaser, no Bidder submitting any Bid shall be entitled to any expense reimbursement or any break-up, termination or similar fee or payment.

o)     All objections to the transactions contemplated by the Purchase Agreement shall be filed with the Court and served on the parties set forth in subparagraph (c) above on or before the Bid Deadline.

### *Procedures for Assumption and/or Assignment of Contracts and Leases*

20.     Pursuant to the Purchase Agreement, the Debtor will also assume and/or assign to the Purchaser, pursuant to 11 U.S.C. § 365, certain prepetition executory contracts and unexpired real property leases to which the Debtor is a party and which have not yet been assumed by the Debtor in this case and, if requested by the Purchaser, any contracts, leases and obligations

entered into by the Debtor after the commencement of this case (collectively, the "**Contracts**"), which Contracts (other than any future post-petition Contracts) have been designated by the Purchaser in the Purchase Agreement. The Debtor will be filing a motion (the "**Assignment Motion**") with the Court for authority to assume and/or assign the Contracts to the Purchaser, and the Debtor's assumption and/or assignment to the Purchaser of the Contracts will be conditioned upon the approval of this Court and the closing of the transactions contemplated by the Purchase Agreement as well as the resolution of the objections, if any, to the Assignment Motion filed pursuant to the procedures described below.

21.     The Debtor requests that this Court include in the Bid Procedures Order the procedures set forth in paragraphs 22-24 below for objections to the Assignment Motion.

22.     The Debtor requests that any lessor or other party to any Contract to be assumed and/or assigned to the Purchaser that objects to, and/or asserts any cure claims, defaults or any other claims against the Debtor in connection with, the proposed assumption and/or assignment must file with this Court, on or before the Bid Deadline, any objection to the assumption and/or assignment of its Contract and/or assertion of claim or default (the "**Objection**"), which Objection shall set forth:

> (a)     the specific grounds for such Objection;
>
> (b)     any and all defaults of the Debtor (whether monetary or non-monetary) that it alleges are in existence under such Contract and, (i) if such alleged defaults are monetary, the nature of such monetary defaults (including the date and amount of any payment allegedly due under the Contract) and cure amounts, if any, due and owing by the Debtor pursuant to 11 U.S.C. §365(b) and, (ii) if such alleged defaults are non-monetary, the nature of such non-monetary defaults and the amount of money or the type of action required to cure such non-monetary defaults; and
>
> (c)     any and all claims of any nature whatsoever against the Debtor.

23.     The Debtor further requests that this Court enter an order providing that lessors or other parties to such Contracts who fail to timely file written Objections to the proposed

assumption and/or assignment of their Contracts as set forth above shall be conclusively deemed to have waived any such Objections and to have consented thereto and further providing that any party not specifying any default or claim as required herein shall be deemed to have conclusively acknowledged that no default or claim exists under any such Contract.

24. The Debtor further requests that this Court enter an order requiring any creditor, any lessor or other party to a Contract, or any other party in interest filing an Objection to the Assignment Motion to serve the same upon the parties listed in paragraph 19(c) above in a manner designed to assure actual receipt by such parties by the Bid Deadline.

### *Expense Reimbursement Amount and Minimum Overbid Amount*

25. In order to induce the Purchaser to conduct its due diligence as to the Assets and reach agreement on a definitive agreement, the Debtor and the Purchaser agreed in the Purchase Agreement upon the payment of an expense reimbursement amount to the Purchaser, subject to certain conditions, in the event the Purchaser is not the successful bidder for the Assets. "Expense Reimbursement Amount" is defined is the Purchase Agreement as an amount equal to the actual costs and out-of-pocket expenses incurred by the Purchaser in connection with its legal, environmental, accounting and business due diligence and the preparation and negotiation of the Purchase Agreement. The Purchaser has advised the Debtor that the Expense Reimbursement Amount is $50,000.

26. The Purchase Agreement requires the Debtor to pay the Purchaser the Expense Reimbursement Amount in the event a sale of all or substantially all of the Assets pursuant to an Alternative Transaction (as defined in the Purchase Agreement) is agreed to by the Debtor within twelve (12) months following the date of the Purchase Agreement, and unless such sale has resulted from the fact that (i) the Purchase Agreement has been terminated in accordance with the terms of Section 8.01(a) of the Purchase Agreement or (ii) the Debtor has terminated the

Purchase Agreement under the terms of Section 8.01(c) of the Purchase Agreement. The Debtor may defer such payment until the closing of the Alternative Transaction, for a period not to exceed forty-five (45) days. The Debtor's obligation to pay the Expense Reimbursement Amount shall survive termination of the Purchase Agreement and shall constitute an administrative expense in this case (which shall be a super-priority administrative expense claim senior to all other administrative expense claims).

27.     The Debtor believes that the Expense Reimbursement Amount is fair and reasonable, especially after taking into account the significant time, effort and expenses of the Purchaser in conducting its due diligence of the Assets and negotiating the Purchase Agreement. In addition, an expense reimbursement amount encourages an initial purchaser to act as a stalking horse whose initial bid will be used to attract higher offers.

28.     The Purchaser has expended significant amounts of money in reaching a determination to acquire the Assets and in negotiating the Purchase Agreement. These efforts will inevitably be of value to any competing bidder, inasmuch as the framework for the transaction will have been structured through the efforts of the Debtor and the Purchaser. The Purchaser was unwilling to expend substantial time and effort reaching a definitive agreement and performing the necessary due diligence, only to find itself outbid in Court, absent the Expense Reimbursement Amount set forth in the Purchase Agreement. In addition, the Debtor has benefited substantially from the willingness of the Purchaser to proceed forward with this transaction, notwithstanding the fact that the transaction is subject to overbid in this Court. For all of these reasons, the Debtor believes that the Purchaser is entitled to the Expense Reimbursement Amount in the event a higher and better offer for the Assets is received and approved by the Court.

29.     The Debtor respectfully submits that the Overbid Amount and the Expense Reimbursement Amount are equitable and in the best interests of the Debtor's estate. Given the size of the transaction and the amount of diligence and effort required by the Purchaser to complete the transaction, it would be inequitable to allow a bidder to outbid the Purchaser by an amount less than the Overbid Amount. Additionally, the Purchaser, with the knowledge of the Debtor, has relied upon the Debtor's agreement to the Overbid Amount and the Expense Reimbursement Amount in proceeding with negotiation of the Purchase Agreement. Finally, the Debtor believes that without reaching some accommodation with the Purchaser regarding the scope of higher and better offers, the Debtor might have lost the bid from the Purchaser.

### *Notice*

30.     The Debtor proposes to send the Bid Procedures Order to (a) all creditors of the Debtor, (b) all parties listed on the Local Rule 1007-2 Parties in Interest List for this case, (c) all parties which, to the knowledge of the Debtor, have or have asserted liens or other interests in the Assets, (d) all lessors or other parties to the Contracts, and (e) any party that has been previously contacted by the Debtor or the Parent or their representatives regarding a purchase of the Assets or that has expressed an interest in acquiring the Assets. By this Motion, the Debtor seeks this Court's approval of the form and manner of notice as being adequate and sufficient notice of the Bid Procedures and the filing of Objections to the assumption and/or assignment of the Contracts.

### **Basis for Emergency Relief**

31.     Due to the exigent circumstances of this Chapter 11 case, the fixing at this time of procedures for the sale of the Debtor's assets is essential and necessary. Certainly, the relief sought would be of considerably greater value if granted immediately.

WHEREFORE, the Debtor respectfully requests entry of an order granting the relief requested herein, and such other and further relief as is just and proper.

Dated: January 22, 2010

/s/ Charles A. Postler
Charles A. Postler (Fla. Bar #455318)
STICHTER, RIEDEL, BLAIN & PROSSER, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
PH     813/229-0144
FAX   813/229-1811
Attorneys for Debtor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **Debtor's Emergency Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of Its Assets, (II) Establishing Procedures for the Assumption and/or Assignment by the Debtor of Certain Executory Contracts and Unexpired Leases, (III) Approving Minimum Overbid Amount and an Expense Reimbursement Amount, (IV) Approving Form and Manner of Notice of Bidding Procedures, and (V) Setting Objection Deadlines** has been furnished on this 22nd day of January, 2010, (i) by **CM/ECF Transmission** (with attached Exhibit A) to the United States Trustee, 501 East Polk Street, Suite 1200, Tampa, Florida 33602, and (ii) by **U.S. Mail** (without attached Exhibit A unless received by the following parties by CM/ECF Transmission) to all parties set forth on Schedule 1 attached hereto.

/s/ Charles A. Postler
Charles A. Postler