## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **HAEMACURE CORPORATION,** | ) | **Case No. 8:10-bk-00359-KRM** |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

## FINAL ORDER AUTHORIZING THE DEBTOR TO (A) OBTAIN SECURED POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c) AND (d), 503(b) AND 507, (B) USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, AND (C) GRANT ADEQUATE PROTECTION

This matter came before the Court for hearing on January 28, 2010, at 11:00 a.m. (the "Final Hearing"), on the Debtor's Emergency Motion for Interim and Final Orders (I) Authorizing the Debtor to (A) Obtain Secured Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c) and (d), 503(b) and 507, (B) Use Cash Collateral Pursuant to 11 U.S.C. § 363, and (C) Grant Adequate Protection, and (II) Scheduling the Final Hearing (the "Motion")[1] filed by Haemacure Corporation, debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Case"); the Debtor having filed a voluntary petition for reorganization pursuant to chapter 11 of title 11, United States Code (the "Bankruptcy Code"), on January 8, 2010 (the "Petition Date"), and having requested in the Motion entry of interim and final orders:

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion or the Credit Agreement (as defined herein), as applicable.

(1)     authorizing and approving, pursuant to sections 364(c) and (d) of the Bankruptcy Code, the Debtor to obtain debtor-in-possession financing from Angiotech Pharmaceuticals, Inc. ("Angiotech") pursuant to the terms and conditions of (a) this Order and any prior order, (b) the Credit Agreement (defined below), as modified by this Order and any prior order, (c) all ancillary documents referred to in this Order and any prior order or required to be executed by the Debtor in connection therewith (collectively, the "DIP Financing Documents"), and (d) the budget annexed as Exhibit A hereto (the "Budget") (collectively, the "DIP Credit Facility");

(2)     authorizing and approving, pursuant to section 363 of the Bankruptcy Code, the Debtor's use of Cash Collateral of Angiotech subject to the limitations herein;

(3)     granting Angiotech subject to the terms and conditions hereinafter set forth, (a) adequate protection, including, without limitation, adequate protection against the diminution in the value or amount of the Pre-Petition Collateral (as defined below), (b) Replacement Liens (as defined below) and (c) a superpriority administrative expense claim under section 507(b) of the Bankruptcy Code, such Replacement Liens and section 507(b) superpriority administrative expense claim and the liens, security interests and superpriority treatment granted to Angiotech, as more particularly set forth herein; and

(4)     granting any further and related relief as the Court deems just and equitable.

An objection to the Motion was filed by Exportkreditnamnden, the Swedish Export Credits Guarantee Board ("EKN")[Doc. No. 45].   In its objection, EKN asserts that (i) Haemacure-Canada (as defined below) and Alfa Laval Tumba AB ("Alfa Laval") entered into that certain Conditional Sale Contract No. 05-0180 dated October 13, 2005 (as amended, the "Conditional Sale Contract") for the sale of certain equipment (the "Sarasota Equipment") by Alfa Laval to Haemacure-Canada, (ii) Alfa Laval filed financing statements perfecting its security interest in the Sarasota Equipment, (iii) Alfa Laval assigned its rights under the

Conditional Sale Contract and perfected security interest in the Sarasota Equipment to EKN, and (iv) EKN filed financing statements perfecting its security interest in the Sarasota Equipment. Counsel for the Debtors and Angiotech announced on the record that they disputed the assertions of EKN that Alfa Laval and EKN had perfected their security interests in the Sarasota Equipment. For the reasons stated on the record, the objection filed by EKN is withdrawn without prejudice as set forth in decretal paragraph 30 below.

Upon the record of the Case and the record of the Interim Hearing (as defined below) and the Final Hearing, good and sufficient cause appearing therefor, and it appearing to be in the best interests of the Debtor's estate and creditors;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW FOR PURPOSES OF ENTERING THIS ORDER:

A.    On the Petition Date, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court"). The Debtor is continuing in the management and possession of its business and properties as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.    Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K), (M) and (O). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

C.    Sufficient and adequate notice of the Motion has been provided under the urgent circumstances present and based upon the notice sent to the Noticed Parties (defined below), pursuant to Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014 and section 102(1) of the Bankruptcy Code, as required by sections 363(b) and 364(c) and 364(d) of the Bankruptcy Code, and no further notice of the hearing on the Motion or this Order is necessary or required.

D.     Angiotech is willing to advance or release monies to the Debtor, and to consent to the use of Cash Collateral, only upon the terms and conditions contained in this Order.

E.     The Debtor is unable to obtain sufficient levels of unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code to maintain and conduct its business.

F.     The Debtor is unable to obtain the necessary financing as unsecured credit allowable under section 364(a), (b) or (c)(1) of the Bankruptcy Code or as secured credit pursuant only to sections 364(c)(2) and (3). Additionally, the Debtor is unable to procure the necessary financing on more favorable terms than those offered by Angiotech as provided in this Order.

G.     The credit and financial accommodations to be extended under the DIP Credit Facility are being extended by Angiotech in good faith; the conditions required by Angiotech in connection with the use of Cash Collateral are made in good faith; the Debtor and Angiotech have negotiated the terms and conditions contained in this Order in an arms' length, open and honest fashion; and Angiotech is entitled to the protection of section 364(e) of the Bankruptcy Code.

H.     It is in the best interests of the Debtor's creditors and estate that it be allowed to finance its operations under the terms and conditions set forth herein.

I.     Notice of the relief sought by the Motion, and the interim hearing with respect thereto, pursuant to Bankruptcy Rules 2002 and 4001(b), (c) and (d) and section 102(1) of the Bankruptcy Code, as required by sections 363(b), 364(c) and (d) of the Bankruptcy Code and as modified by order of this Court, has been given to the following parties in interest: (a) the Office of the United States Trustee for the Middle District of Florida; (b) counsel to Angiotech; and (c) all creditors of the Debtor's estate (collectively, the "Noticed Parties").

J.    On January 14, 2010, this Court held an interim hearing on the Motion (the "Interim Hearing"). Based on the Motion and the record at the Interim Hearing, this Court entered its order on January 25, 2010 (Doc. No. 41) authorizing, on an interim basis, certain relief sought by the Motion (the "Interim Order").

K.    Pursuant to Bankruptcy Rules 2002 and 4001(b), (c) and (d) and section 102(1) of the Bankruptcy Code, as required by sections 363(b), 364(c) and (d) of the Bankruptcy Code and as modified by order of this Court, notice of the relief sought by the Motion, the Interim Hearing with respect thereto, the entry of the Interim Order, and the scheduling of the Final Hearing has been given as required by the Interim Order.

L.    After consultation with its counsel and financial advisors, but without prejudice to the rights of parties in interest as set forth in paragraph 11 below, the Debtor admits, stipulates, acknowledges and agrees that (collectively, paragraphs L(i) through L(vi) hereof shall be referred to herein as the "Debtor's Stipulations"):

(i)    The Credit Agreement. The Debtor, the Debtor's parent company Haemacure Corporation, a corporation duly incorporated under the Canada Business Corporations Act ("Haemacure-Canada" or "Parent") and Angiotech are parties to that certain Senior Secured Convertible Bridge Loan dated as of June 1, 2009, a copy of which is attached to the Motion as Exhibit B (the "June 1 Agreement"), as modified and amended by that certain Letter Agreement dated as of January 7, 2010 among Angiotech, Parent and the Debtor, a copy of which is attached to the Motion as Exhibit C (the "Letter Agreement") and that certain Forbearance Agreement dated as of January 8, 2010, a copy of which is attached to the Motion as Exhibit D (the "Forbearance Agreement" and together with the June 1 Agreement and the Letter Agreement, collectively, the "Credit Agreement"). The Credit Agreement provided for initial loans to Haemacure-Canada in the principal amount of US $2,500,000 (which additional loans

were guarantied by the Debtor as described below) and, as provided in the Letter Agreement and the Forbearance Agreement, additional loans to Haemacure-Canada and the Debtor "solidarily" in a further principal amount of up to US $1,000,000, upon and subject to the terms and conditions thereof. As of the Petition Date, Angiotech had advanced a total of US $2,683,000 under the Credit Agreement.

(ii)  The Debtor's Guaranty.  Pursuant to a certain Continuing, Absolute and Unconditional Guaranty dated as of June 1, 2009, the Debtor guaranteed the obligations of Haemacure-Canada under the Credit Agreement (the "Pre-Petition Guaranty").  Pursuant to a Security Agreement also dated as of June 1, 2009 (the "Pre-Petition Security Agreement") in favor of Angiotech, the Debtor and Haemacure-Canada, as grantors, granted Angiotech, as security for the obligations of Haemacure-Canada under the Credit Agreement and the Debtor under the Pre-Petition Guaranty (such obligations, as confirmed by the Letter Agreement and the Forbearance Agreement, as of the Petition Date being referred to herein as the "Pre-Petition Obligations"), by a lien on and security interest in, the Collateral, as described in the Motion (the Collateral owned or acquired by the Debtor or Haemacure-Canada as of the Petition Date, or in which Haemacure-Canada or Debtor has any right, title or interest as of the Petition Date, being referred to herein as the "Pre-Petition Collateral").

(iii)  The Pre-Petition Indebtedness.  As of January 8, 2010, Haemacure-Canada was indebted to Angiotech under the June 1 Agreement in the aggregate amount of not less than US $2,683,000, plus interest, costs, expenses and other charges thereon, which amounts are guarantied by the Debtor under the Pre-Petition Guaranty.  The Debtor is a co-borrower "solidarily" liable with Haemacure-Canada for so much of the Pre-Petition Indebtedness advanced under the Letter Agreement and the Forbearance Agreement.  The foregoing obligations, together with, as of the Petition Date, all other indebtedness and other obligations of

the Debtor under the Credit Agreement, including, but not limited to, fees, costs and expenses (including, but not limited to, attorneys' fees and expenses), and other charges, amounts and costs owing, accrued, accruing or chargeable in respect thereof, of any kind or nature, whether existing or contingent, payable to or for the benefit of any person or entity, pursuant to any of the foregoing agreements, instruments or documents, is herein referred to as the "Senior Secured Indebtedness."

(iv)    The Pre-Petition Senior Liens.    The Senior Secured Indebtedness is secured by all of the Pre-Petition Collateral owned or acquired by the Debtor as of the Petition Date and products and proceeds thereof. Angiotech's Pre-Petition Senior Liens, as defined in the Motion, were duly perfected as the first priority liens and security interests in and upon the Pre-Petition Collateral. Angiotech filed UCC Financing Statement No. 2009-1696878 on May 29, 2009 with the Delaware Secretary of State with respect to the Pre-Petition Collateral.

(v)    Validity and Priority of Pre-Petition Liens and Indebtedness.  (a) The Pre-Petition Senior Liens are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code, (b) the Senior Secured Indebtedness constitutes legal, valid, binding and non-avoidable obligations of the Debtor that, except for the stay of enforcement arising from section 362 of the Bankruptcy Code, are enforceable in accordance with the terms of, respectively, the Credit Agreement and the Loan Documents as defined in the Credit Agreement (collectively, the "Pre-Petition Senior Loan Documents"), (c) no offsets, defenses, challenges, claims, or counterclaims of any kind or nature to any of the Senior Secured Indebtedness exist, and no portion of the Senior Secured Indebtedness is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (d) the Debtor and its estate have no offsets, defenses, claims, objections, challenges, causes of action, and/or choses in action, including without limitation claims under chapter 5 of the Bankruptcy

Code, against Angiotech and/or its affiliates, agents, attorneys, advisors, professionals, officers, directors or employees.

        (vi)   <u>Cash Collateral</u>.   All of the Debtor's cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents, whether original collateral or proceeds, products, rents or profits of other Pre-Petition Collateral or the proceeds thereof (the "<u>Cash Collateral</u>"), constitutes "cash collateral," as such term is defined in Bankruptcy Code section 363(a), of Angiotech.

      M.   The Debtor represents as follows:

        (i)   Without the use of Cash Collateral and the financing proposed by the Motion, the Debtor will not have the funds necessary to pay post-petition payroll, payroll taxes, trade vendors, suppliers, overhead and other expenses necessary for the continued operation of the Debtor's business and the management and preservation of the Debtor's assets and properties. The Debtor has requested that pursuant to this Order and the Budget, Angiotech make available to the Debtor Cash Collateral, and pursuant to the DIP Credit Facility, Angiotech make loans and advances and provide other financial accommodations to the Debtor, to be used by the Debtor solely for the purposes set forth in the Budget. The ability of the Debtor to continue its business and pursue the Case depends upon the Debtor obtaining such financing from Angiotech, and the use of the Cash Collateral of Angiotech. Angiotech is willing to make the Cash Collateral available, and to make such loans and advances and provide such other financial accommodations on a secured basis, as more particularly described herein, solely in accordance with this Order and pursuant to the terms and conditions of the DIP Credit Facility. Accordingly, the relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtor's business, the management and preservation of its assets and properties, and is in the best interests of the Debtor, its estate and creditors;

(ii)    The Debtor is unable to obtain the necessary financing as unsecured credit allowable under section 364(a), (b) or (c)(1) of the Bankruptcy Code or as secured credit pursuant only to sections 364(c)(2) and (3) of the Bankruptcy Code, and the Debtor is unable to procure the necessary financing on more favorable terms than those offered by Angiotech, as provided in this Order;

(iii)    The terms and conditions contained in this Order governing the use of Cash Collateral and the DIP Credit Facility, pursuant to which the post-petition loans, advances, and other credit and financial accommodations will be made or provided to the Debtor by Angiotech, have been negotiated honestly, openly and at arms' length and in good faith, and, thus, in "good faith," as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtor, its estate and creditors. The Debtor further represents that Angiotech is extending financing to the Debtor in good faith and Angiotech is entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code; and

(iv)    The relief requested by the Motion is necessary to avoid immediate and irreparable harm to its estate.

L.    Good, adequate and sufficient cause has been shown to justify the granting of the relief requested in the Motion, and the immediate entry of this Order, and such entry is necessary to prevent irreparable harm to the Debtor's estate. To the extent any objections were made to the relief sought in the Motion and the entry of this Order (and not withdrawn prior to the entry of this Order) such objections are hereby overruled.

M.    As of the date hereof, the Office of the United States Trustee has not appointed an official committee of unsecured creditors (the "Committee") under section 1102 of the Bankruptcy Code.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.      Motion Granted.  The Motion is GRANTED as set forth herein.

2.      Authorization to Obtain Debtor-in-Possession Financing.  The Debtor is hereby authorized, whether prior or subsequent to the execution and delivery of any DIP Financing Documents, to borrow funds from, and incur debt to, Angiotech under the DIP Credit Facility having the following terms:

(a)     Upon effectiveness of this Order, the Debtor, as borrower, grantor, pledgor, assignor, or in other similar capacities in which the Debtor incurred indebtedness or other obligations or granted liens or security interests in its properties, shall be deemed to have (i) acknowledged and consented to each of the terms of this Order, (ii) confirmed, ratified and reaffirmed (A) all of its indebtedness, obligations and undertakings under each of the Pre-Petition Senior Loan Documents, and (B) its grant of security interests and liens in all of its properties pursuant to any such Pre-Petition Senior Loan Documents as security for such indebtedness, obligations and undertakings under the Pre-Petition Senior Loan Documents, (iii) (A) agreed that all such indebtedness, obligations and undertakings and all such security interests and liens remain in full force and effect and apply equally to all indebtedness, obligations and undertakings of the Debtor to Angiotech, whether arising before, on or after the Petition Date, (B) agreed that all liens and security interests in Collateral granted by the Debtor continue to secure the payment and performance of all such indebtedness, obligations and undertakings, whether arising before, on or after the Petition Date, and (C) acknowledged and agreed that there is no defense, setoff or counterclaim of any kind, nature or description to such indebtedness, obligations and undertakings, (iv) acknowledged and agreed that all references to the Credit Agreement in any Pre-Petition Senior Loan Document shall mean and include the Credit Agreement, as amended and modified by this Order, and (v) agreed that this Order

shall not operate as a waiver of any right, power or remedy of Angiotech, constitute a waiver of any provision of any of the Pre-Petition Senior Loan Documents or serve to effect a novation of the Senior Secured Indebtedness.

(b)    The DIP Credit Facility shall be governed by, and conducted upon and subject to, the terms and conditions of the Pre-Petition Senior Loan Documents, as modified by the terms and conditions of this Order. All of the terms and conditions of the Pre-Petition Senior Loan Documents shall remain in full force and effect and applicable to the Debtor, as "Borrower" or "Guarantor" (or equivalent party otherwise named) thereunder and Angiotech, as "Lender" (or equivalent party otherwise named) thereunder, except to the extent that any thereof are inconsistent with the terms and conditions of this Order, in which case the terms and conditions of this Order shall prevail.

(c)    The aggregate principal amount of credit under the DIP Credit Facility shall be the balance of unborrowed funds under the Credit Agreement, which were, at the Petition Date, approximately $817,000 (the "Maximum Committed DIP Facility" and, as and to the extent advanced, the "DIP Advances".

(d)    The stated maturity date shall be, and all DIP Advances, interest, fees and other Post-Petition Obligations (defined below) shall be due and payable in full on, March 31, 2010; *provided*, *however*, that Angiotech may, in its sole and absolute discretion, refuse to make additional DIP Advances and accelerate the maturity of all DIP Advances and demand immediate and full payment of all DIP Advances, all interest and fees accrued under the DIP Credit Facility, and all other Post-Petition Obligations upon the date on which an Event of Default (as defined in the Credit Agreement) or a Termination Event (defined below) occurs. The date that is the earliest to occur of

(i) March 31, 2010, (ii) the date on which Angiotech accelerates maturity as provided in the immediately preceding sentence, (iii) the effective date of the plan of reorganization of the Debtor or the emergence of the Debtor from bankruptcy, and (iv) the date on which a Termination Event (as defined below) occurs, is the "Maturity Date"; the period commencing on the Petition Date and ending on the Maturity Date is the "DIP Facility Term."

(e)     The Debtor shall submit each request for a DIP Advance to Angiotech using a form satisfactory to Angiotech, together with such detail, supporting documentation and certifications, signed by an authorized officer of the Debtor, as Angiotech may require.  Any request for a DIP Advance shall be made: (i) not more frequently than once every day; and (ii) on notice consistent with past practice (as defined in the June 1 Agreement) before the proposed date of the DIP Advance.

(f)     As further conditions to the Debtor's entitlement to a DIP Advance, (i) the representations and warranties of the Debtor contained in the Credit Agreement shall be true in all material respects on and as of the date of such DIP Advance, with the same effect as if made on and as of such date, and (ii) no Termination Event shall have occurred and be continuing.

(g)     The DIP Advances shall bear interest at a rate, and be payable in the manner, each as provided in the Credit Agreement.  Subject to any maximum interest rate limitation specified by applicable law, any variable rate of interest provided for herein shall change automatically without notice to the Debtor with each change in the applicable rate.  In no contingency or event whatsoever shall the interest rate charged pursuant to the terms of this Order exceed the highest rate permissible under any law

which a court of competent jurisdiction shall, in a final determination, deem applicable hereto.

(h)     Angiotech shall keep account of all DIP Advances, any repayments thereof, interest and fees and other sums, which account shall be deemed binding on the parties, absent manifest error.

(i)     The Debtor shall pay, and upon demand reimburse Angiotech, for all of Angiotech's reasonable costs and expenses incidental to the extension of credit and the administration or modification thereof (including negotiation, preparation and enforcement of this Order and all of the DIP Financing Documents and including all funds expended by Angiotech to preserve the Collateral and its interests therein, such as the payment of insurance premiums upon the Debtor's default in doing so) provided for in this Order or any DIP Financing Document, including reasonable fees and out-of-pocket expenses of Angiotech's counsel or other professional, and any revenue, stamp, excise, note or mortgage taxes claimed payable by any federal, state or local authority. All such reasonable expenses paid by Angiotech hereunder shall be additional Post-Petition Obligations (as defined herein) secured by the Collateral (as defined herein).

3.     <u>Approval of DIP Credit Facility</u>.   The Debtor's confirmations, ratifications, reaffirmations and other acknowledgments and agreements pursuant to paragraph 2(a), above, and the proposed borrowings and other extensions of credit under the DIP Credit Facility are hereby approved.  Angiotech shall have the rights and the obligations set forth in this Order to make DIP Advances and/or other financial accommodations pursuant to the terms and conditions hereof.

4. <u>Authorization to Use Cash Collateral</u>. The Debtor is hereby authorized to use Cash Collateral, during the DIP Facility Term, in accordance with the terms and conditions of this Order.

5. <u>Budget Limitations on DIP Advances and Cash Collateral Usage</u>. All DIP Advances and Cash Collateral must be used strictly in accordance with the terms of the Budget. The Debtor shall not, without the prior written consent of Angiotech, use DIP Advances or Cash Collateral with respect to any one expense line item in the Budget in excess of 105% of the amount identified in the Budget for that line item, or in excess of 105% of the total amount identified in the Budget, in either case measured on a cumulative two-week basis. Any extension or other modification of the Budget shall be subject to the prior written approval of Angiotech. The right of the Debtor to use DIP Advances or Cash Collateral, including any amounts in any and all deposit accounts maintained by the Debtor (each a "<u>Deposit Account</u>") on the Petition Date or credited to a Deposit Account on or after the Petition Date, shall terminate on the Maturity Date.

6. <u>Angiotech's Superpriority Claim</u>. For any and all obligations of the Debtor to Angiotech under and pursuant to the DIP Credit Facility (the "<u>Post-Petition Obligations</u>"), and in addition to the rights granted below, Angiotech is hereby granted an allowed superpriority administrative claim in accordance with section 364(c)(1) of the Bankruptcy Code, having a priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtor (including, but not limited to, the Senior Secured Indebtedness, which for avoidance of doubt is not entitled to treatment as an ordinary or superpriority administrative claim except to the extent of any Angiotech Adequate Protection Claim, as defined below, for diminution in value or as adequate protection for priming by the DIP Credit Facility), now in existence or hereafter incurred by the Debtor and over any and all administrative expenses or priority claims

of any kind including as specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726(b) (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code, whether arising in the Case or in any superseding chapter 7 case concerning the Debtor (a "Successor Case"), subject only to the claims of the following parties in the following amounts: (i) up to $20,000 for the fees and expenses of Stichter, Riedel, Blain & Prosser, P.A. ("SRBP"), counsel to the Debtor, incurred after the occurrence of termination of the DIP Credit Facility, plus any unpaid fees and expenses of SRBP incurred prior to the termination of the DIP Credit Facility, plus (ii) in the event a Committee shall be organized, up to $10,000 for the fees and expenses of counsel to the Committee, without prejudice to the right of the Committee to file a motion seeking a higher amount and the right of the Debtor and Angiotech to object to any such motion, and (iii) the unpaid fees of the United States Trustee and the Clerk of the Court payable pursuant to 28 U.S.C. § 1930(a) (collectively, the "Carve-Out").

7.    Angiotech's Collateral and Priority. Pursuant to Bankruptcy Code sections 362, 363(e) and 364(c) and (d), as security for the prompt payment and performance of any and all Post-Petition Obligations incurred by the Debtor to Angiotech, of whatever nature or description, the Debtor is hereby authorized to grant to Angiotech, and upon the entry of this Order shall be deemed hereby to have granted to Angiotech, valid, binding, enforceable and perfected first priority liens and security interests (superior to the liens, mortgages, security interests or other interests or rights of all other creditors of the Debtor's estate) in and upon all of the Debtor's assets and property of whatsoever nature, real and personal, whether now owned or existing or hereafter acquired or arising, including, but not limited to (i) all of the Pre-Petition Collateral, (ii) all commercial tort claims of the Debtor, whenever acquired, and (iii) all of the Debtor's property and assets acquired by the Debtor on or after the Petition Date, of any kind or nature,

whether real or personal, tangible or intangible, wherever located, including, but not limited to: the Debtor's accounts, chattel paper and electronic chattel paper, deposit accounts, documents, equipment, general intangibles, goods, instruments, inventory, investment property, letter of credit rights, letters of credit, all sums on deposit in any collateral account and any items in any lockbox, and all property, each as defined in the Credit Agreement, and all products and proceeds of any and all of the foregoing (collectively, the "Collateral"), subject only to: allowed pre-petition liens, if any. No specific description or identification of property in this paragraph shall constitute an inference that such property is not part of the Collateral. Notwithstanding the foregoing, however, the Collateral shall not include causes of action under chapter 5 of the Bankruptcy Code and recoveries thereunder, including sections 544 through 550 and section 553 or other applicable law.

8.    Adequate Protection of Angiotech's Interests.  As adequate protection for any post-petition diminution in value of Angiotech's interests in the Pre-Petition Collateral, including without limitation for any diminution in value resulting from the use of Cash Collateral, the use, sale or lease of any other Pre-Petition Collateral, or the imposition of the automatic stay, Angiotech is hereby granted a post-petition claim (the "Angiotech Adequate Protection Claim") against the Debtor's estate.   In order to secure the Angiotech Adequate Protection Claim, Angiotech is hereby granted a lien, mortgage and security interest (the "Angiotech Replacement Lien") in and upon the Collateral and all proceeds thereof, subject only to (i) the liens granted to Angiotech under paragraph 7 hereof, (ii) the liens and security interests existing on the Petition Date in favor of Angiotech, and (iii) any liens and security interests that may be granted to Angiotech under paragraph 9 hereof.  To further provide adequate protection for the Angiotech Adequate Protection Claim, Angiotech is granted an allowed superpriority administrative claim in accordance with section 507(b) of the Bankruptcy Code having a priority in right of payment

over any and all administrative expenses or priority claims of any kind including as specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726(b) (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code, whether arising in the Case or any Successor Case and the superpriority administrative claim granted to Angiotech, but subject to the Carveout. As further adequate protection, the Debtor shall pay to Angiotech (a) on the date on which the DIP Credit Facility is effective all expenses (including but not limited to all reasonable fees and expenses of Angiotech and its counsel and other professionals) accrued on the Senior Secured Indebtedness to that date, and (b) all reasonable fees and expenses of Angiotech and their professionals incurred post-petition, upon presentation of an invoice therefor.

9.    Collateral for Senior Secured Indebtedness.  The Debtor shall be deemed  to grant to Angiotech, as security for the payment and performance of any and all Senior Secured Indebtedness, valid, binding, enforceable and perfected first priority liens and security interests in and upon the Collateral, superior to the liens, mortgages, security interests and other interests and rights of all other creditors of the Debtor's estate, subject only to the liens and security interests granted to Angiotech under this Order.

10.    Section 506(c) Waiver.  Under the facts and circumstances of this Case there is no basis for a recovery under section 506(c) of the Bankruptcy Code and the Debtor, for itself and anyone claiming through or under the Debtor or on behalf of the Debtor's estate, hereby waives and agrees not to assert any section 506(c) claims against Angiotech.

11.    Reservation of  Certain Third Party Rights and Bar of Challenges and Claims. Nothing in this Order shall prejudice the rights of any party in interest other than the Debtor to object to or challenge the Debtor's Stipulations; *provided however,* that unless such other party in interest obtains proper standing and commences a contested matter or adversary proceeding

raising such objection or challenge, including without limitation any claim against Angiotech in the nature of a setoff, counterclaim or defense, to the Senior Secured Indebtedness (including, but not limited to, those under sections 506, 544, 547, 548, 550 and/or 552 of the Bankruptcy Code or by way of suit against Angiotech) **by February 28, 2010**, then, on March 1, 2010 (the "Challenge Period Termination Date"), any and all such challenges and objections by any party shall be deemed to be forever waived, barred and discharged and the Debtor's Stipulations shall be binding on all persons, entities, creditors, interest holders and parties in interest in the Case or any Successor Case, and upon the Challenge Period Termination Date the Senior Secured Indebtedness shall be deemed to be fully and finally allowed under the Bankruptcy Code for all purposes in connection with this Case and any Successor Case, to the extent permitted by applicable law. Only those parties in interest that have properly and with requisite standing initiated an adversary proceeding or contested matter challenging the Debtor's Stipulations prior to the Challenge Period Termination Date shall be permitted to prosecute such adversary proceeding or contested matter.

12. <u>Limitation on Other Authorization for Cash Collateral Use, Obtaining Credit, Granting of Liens, Return of Goods</u>. So long as there are any Post-Petition Obligations outstanding to Angiotech under the DIP Credit Facility and until the Angiotech Adequate Protection Claims are satisfied indefeasibly in full, unless Angiotech shall have given its prior written consent, or this Court enters an order, upon proper notice to Angiotech and after hearing, requiring that all the Debtor's obligations to Angiotech and the Angiotech Adequate Protection Claims be immediately satisfied in full, the Debtor shall neither seek any further orders in the Case, nor support any applications therefor, which authorize: (a) under Bankruptcy Code section 363, the use of Cash Collateral or the sale, use, or lease, other than in the ordinary course of business, of other property of the Debtor in which Angiotech has an interest; or (b) the

obtaining of credit or the incurring of indebtedness pursuant to Bankruptcy Code section 364(c) or (d), or any other grant of rights against the Debtor and/or its estate, secured by a lien, mortgage or security interest in the Pre-Petition Collateral or the Post-Petition Collateral or entitled to priority administrative status which is equal or superior to that granted to Angiotech herein.

     13.   <u>Angiotech's Fees and Expenses</u>.  Angiotech shall be entitled to charge the Debtor's accounts wherever located or receive reimbursement thereof, without application to the Court, upon ten (10) days' notice to the U.S. Trustee, any Committee appointed and the Debtor, for: (a) all of Angiotech's reasonable fees and expenses, its attorneys' reasonable fees and expenses, and its other advisors' or professionals' reasonable fees and expenses, all such reasonable fees and expenses arising from or related to the DIP Credit Facility or any actions taken in connection with the Case, including, without limitation, the negotiating, closing, documenting and obtaining of Court approval thereof, and all proceedings in connection with the interpretation, amendment, modification, enforcement or carrying out of the DIP Credit Facility or this Order at any time, and all reasonable expenses, costs and charges in any way or respect arising in connection therewith or related thereto; (b) all of Angiotech' reasonable fees and expenses, its attorneys' reasonable fees and legal expenses, and its other advisors' or professionals' reasonable fees and expenses, all such reasonable fees and expenses arising from or related to the Pre-Petition Senior Loan Documents, the Angiotech Adequate Protection Claim, this Order, or any action taken in connection with the Case, including, without limitation, the negotiating and obtaining of Court approval of this Order, and proceedings in connection with the interpretation, amendment, modification, enforcement or carrying out of the Pre-Petition Senior Loan Documents or the Angiotech Adequate Protection Claim or this Order at any time, and all reasonable expenses, costs and charges in any way or respect arising in connection

therewith or related thereto, and such reasonable fees and expenses in the foregoing subparagraphs (a) and (b) shall constitute a part of the Post-Petition Obligations.

14. <u>Insurance: Governmental Charges</u>. The Debtor, at its expense, shall (a) continue to at all times keep the Collateral fully insured against all loss, peril and hazard and make Angiotech co-insured and loss payee as its interests appear under such policies, and (b) pay any and all post-petition taxes, assessments and governmental charges with respect to the Collateral, whether or not the Debtor is obligated to do so under the Pre-Petition Senior Loan Documents, and will provide Angiotech with proof thereof upon written demand and will give Angiotech access to its records in this regard.

15. <u>Collateral Proceeds</u>. The Debtor shall hold all monies, checks, drafts and any other payments or collections received from its customers, account debtors and other parties, now or hereafter obligated to pay the Debtor for goods or services provided by the Debtor or for inventory or other property of the Debtor's estate, and all other proceeds of all Collateral, for Angiotech, and turn over such proceeds to Angiotech for application in accordance with the DIP Financing Documents and the Pre-Petition Senior Loan Documents.

16. <u>Modification of Automatic Stay</u>. The automatic stay provisions of Bankruptcy Code section 362 are hereby modified to permit (a) the Debtor to implement the terms of the DIP Credit Facility, (b) the Debtor to grant the Angiotech Replacement Liens as adequate protection to Angiotech, and (c) the Debtor to create, and Angiotech to perfect, any and all liens, mortgages and security interests granted to it hereunder; *provided, however*, that Angiotech shall not be required to file UCC financing statements or other instruments with any other filing authority to perfect any lien, mortgage or security interest granted by this Order or take any other action to perfect such liens and security interests, and such liens and security interests are hereby deemed perfected; *provided however,* that if Angiotech shall, in its sole discretion, elect for any reason to

file, record or serve any such financing statements or other documents with respect to such liens and security interests, the Debtor shall execute the same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time and on the date required to implement the priority of such liens and security interests as provided in this Order.

17.    No Impairment by Plan.  The time of payment of any and all Post-Petition Obligations of the Debtor arising out of or incurred pursuant to the DIP Credit Facility shall not be altered, extended or impaired by any plan or plans of reorganization that may hereafter be accepted or confirmed or any further orders of the Court which may hereafter be entered.

18.    Termination Events.  The occurrence of any one or more of the following events shall constitute a "Termination Event" under this Order:

(i)    the Case is either dismissed or converted to a case under chapter 7 of the Bankruptcy Code;

(ii)    a trustee or an examiner with expanded powers is appointed in the Case;

(iii)    any plan of reorganization of the Debtor is filed which does not provide for the payment in full in cash of the Post-Petition Obligations upon the effective date of the plan;

(iv)    the Debtor ceases operation of its business or takes any material action for the purpose of effecting such cessation without the prior written consent of Angiotech;

(v)    this Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall materially and adversely affect the rights of Angiotech hereunder or shall materially and adversely affect the priority of any or all of Angiotech's claims, liens or security interests and which is not acceptable to Angiotech;

(vi)    the Debtor's failure to comply with or perform the terms and provisions of this Order or any DIP Financing Document, including, without limitation, using DIP Advances or Cash Collateral other than in accordance with the provisions of paragraph 5 hereof concerning the Budget;

(vii)    any sale or other disposition of Collateral or Cash Collateral is approved without the consent of Angiotech;

(viii)    any superpriority claim or lien equal or superior in priority to that granted to Angiotech pursuant to this Order or permitted hereunder shall be granted;

(ix)    the automatic stay of Bankruptcy Code section 362 is lifted so as to allow a party other than Angiotech to proceed against any material asset of the Debtor; or

(x)    the Debtor shall have filed, or the Court shall have entered an order confirming, a plan of reorganization, which plan is not in form and substance acceptable to Angiotech.

19.    <u>Remedies Upon Maturity/Termination</u>.    Upon the occurrence of the Maturity Date, or upon the occurrence of a Termination Event and the giving of the Remedies Notice (as defined below):

(a)    any and all Post-Petition Obligations shall be immediately due and payable, any obligation of Angiotech to make DIP Advances or other financial accommodations under the DIP Credit Facility shall terminate, and the Debtor's authorization to use Cash Collateral shall terminate (subject to the provisions of paragraph 19(b) hereof);

(b)    the Debtor shall immediately segregate all Cash Collateral, and shall not be permitted to use Cash Collateral unless Angiotech shall have given its prior written consent or the Court shall have entered an order, after a hearing upon notice to Angiotech, authorizing such use; and

(c)     Angiotech shall have the right, free of the restrictions of section 362 of the Bankruptcy Code, (i) to take immediate reasonable action to protect and preserve the Collateral, and (ii) after giving five (5) Business Days' prior written notice of a Termination Event to the Debtor, the Office of the U.S. Trustee, and any Committee (the "Remedies Notice"), to exercise its rights and remedies pursuant to the DIP Financing Documents, the Pre-Petition Senior Loan Documents, and/or applicable law, including, without limitation, to foreclose on all or any portion of the Collateral, collect accounts receivable and other monies owing to the Debtor and apply the proceeds thereof in satisfaction of the Post-Petition Obligations and the Senior Secured Indebtedness unless, prior to the passage of such five (5) Business Days, the Court shall have entered an order, after a hearing upon notice to Angiotech limiting or restraining Angiotech from exercising any or all such rights and remedies.

20.     No Limitation on Further Relief.  Nothing in this Order shall limit the rights of Angiotech to seek further relief (including additional adequate protection), or modification or termination of the automatic stay in accordance with Bankruptcy Code section 362(d).

21.     No Limitation on Assignment of Rights.  Nothing in this Order shall limit the rights of Angiotech to assign any or all of its rights, claims and obligations under the DIP Financing Documents or the Pre-Petition Senior Loan Documents (as applicable).

22.     Reporting Obligations.  Without limiting the Debtor's reporting or other obligations under the DIP Financing Documents or the Pre-Petition Senior Loan Documents:

(a)     the Debtor shall deliver weekly to Angiotech, no later than the close of business each Wednesday, a breakdown by line-item, in the same format as the Budget, of the Debtor's actual cash receipts and disbursements for the immediately preceding week, and cumulatively for all preceding weeks after the Petition Date, which shows such actual receipts and disbursements for the applicable period compared to such receipts and disbursements for the

applicable period as projected in the Budget, such report to be certified by an officer of the Debtor to be accurate to the best of his/her knowledge, information and belief;

(b)     the Debtor shall deliver to Angiotech, no later than twenty (20) calendar days after the end of each month a copy of the Debtor's monthly operating report for such month as filed with the Court and with the Office of the U.S. Trustee;

(c)     the Debtor shall deliver to Angiotech, within five (5) calendar days of the Debtor's receipt thereof, copies of all financial statements which reflect the Debtor's assets and liabilities and results of operations; and

(d)     the Debtor shall permit representatives, agents and/or employees of Angiotech to visit, inspect and have access to the Debtor's premises and books and records upon three (3) Business Days' notice, and shall cooperate and consult with, and provide to such representatives, agents and/or employees all such information as they may reasonably request, and Angiotech shall have the right to inspect, audit, examine, check, make copies of or extracts from the books, accounts, checks, orders, invoices, bills of lading, correspondence and other records of the Debtor, and the Debtor shall make all of same available to Angiotech and its representatives for such purposes.

23.     <u>Books and Records</u>.  The Debtor is directed to keep its books and records of original entry current and updated, so that all business activity is posted to them in the ordinary course of the Debtor's business.

24.     <u>Good Faith</u>.  Pursuant to, and to the extent of, the provisions of Bankruptcy Code section 364(e), the validity of the Post-Petition Obligations and the validity or priority of the liens and security interests authorized or granted by this Order shall be binding on the Debtor, its estate and their successors and assigns even if this Order is reversed or modified on appeal.

25. <u>Additional Documents</u>. The Debtor is hereby authorized to do and perform all acts and to make, execute and deliver all instruments and documents which may be required or necessary for the performance of its obligations hereunder and under the DIP Credit Facility.

26. <u>Immediate Effect</u>. As permitted by Bankruptcy Rule 6004(h), the Court hereby orders that this Order shall become effective immediately.

27. <u>Survival After Confirmation, Conversion or Dismissal</u>. The provisions of this Order and any actions taken pursuant thereto shall survive entry of any orders which may be entered confirming any plan of reorganization or which may be entered converting this Case from chapter 11 to chapter 7 of the Bankruptcy Code; *provided, further,* that the terms and provisions of this Order, as well as the liens and security interests granted hereunder, shall continue in this Case or any Successor Case and such liens and security interests and the Angiotech Adequate Protection Claim shall maintain their priority as provided by this Order, to the extent permitted by applicable law.

28. <u>No Limitation of Modification of Order</u>. Nothing in this Order shall limit Angiotech's rights to seek modification of this Order.

29. <u>No Prejudice of Rights Against Third Parties</u>. Nothing in this Order shall in any way prejudice or compromise any rights that the Angiotech may have against parties other than the Debtor.

30. <u>EKN Objection</u>. The objection to the Motion filed by EKN is withdrawn without prejudice to its rights to object to the sale or other disposition of the Sarasota Equipment and further provided that this Order shall not constitute a determination as to the extent, validity, perfection, priority or enforceability of the liens and claims as to the Sarasota Equipment asserted by EKN (either for itself or on behalf of Alfa Laval). Nothing in this Order shall preclude or restrict the Debtor, Haemacure-Canada, Angiotech, or any committee or trustee appointed in this

case from challenging the extent, validity, perfection, priority or enforceability of the liens and claims as to the Sarasota Equipment asserted by EKN (either for itself or on behalf of Alfa Laval) or seeking approval of the sale or other disposition of the Sarasota Equipment over the objections of EKN.

31.    <u>Service of this Order</u>.  Within three (3) Business Days after the entry of this Order, the Debtor shall serve a copy on (a) the Office of the U.S. Trustee; (b) the Internal Revenue Service; (c) all state and local taxing authorities concerning the Debtor; (d) counsel to any Committee, if any; (e) all creditors of the Debtor; and (f) counsel to Angiotech.

32.    <u>Binding Effect</u>.  The provisions of this Order shall be binding upon and inure to the benefit of Angiotech, the Debtor, the Debtor's estate and their respective successors and assigns (including any trustee appointed as a representative of the Debtor's estate or in any Successor Case).

33.    <u>Controlling Effect</u>.  To the extent that any provision of this Order conflicts with any provision of any of the Pre-Petition Senior Loan Documents, which shall remain in full force and effect, or any of the DIP Financing Documents, this Order is deemed to control and shall supersede the conflicting provision(s).

**DONE** AND **ORDERED** in **Chambers** at Tampa, Florida on  February 02, 2010  .

K. RODNEY MAY
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

# HAEMACURE CORPORATION weekly cash flow forecast

| HAE US OPERATIONS in US $ | Week starting Jan 11, 2010 | Week starting Jan 18, 2010 | Week starting Jan 25, 2010 | Week starting Feb 1, 2010 | Week starting Feb 8, 2010 | Week starting Feb 15, 2010 | Week starting Feb 22, 2010 | Week starting March 1, 2010 | Week starting March 8, 2010 | Week starting March 15, 2010 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Salaries and benefits** | | | | | | | | | | | |
| Dawn Benson | 6,188 | | 6,188 | | 1,238 | 4,950 | 6,188 | | 4,950 | 1,238 | 30,938 |
| Ken Smith | 5,729 | | 5,729 | | 1,146 | 4,583 | 5,729 | | 4,583 | 1,146 | 28,646 |
| Lynn Carr | 2,979 | | 2,979 | | 596 | 2,383 | 2,979 | | 2,383 | 596 | 14,896 |
| Claudia Bryant | 990 | | 990 | | 198 | 792 | | | | | 2,970 |
| Aetna Insurance | | | | 5,320 | | | | 3,770 | | | 9,090 |
| Guardian Insurance | | | | 1,268 | | | | 1,058 | | | 2,326 |
| Benefits pension plan (employer only) | | | | 500 | | | | 500 | | | 1,000 |
| **Rent** | | | | | | | | | | | - |
| **Office expenses** | | | | | | | | | | | |
| *Equipment leases* | | | | | | | | | | | - |
| Photocopieur | 560 | | | | | 560 | | | | 560 | 1,679 |
| Floor scruber (plant) | 495 | | | | | 495 | | | | 495 | 1,486 |
| Phones | 162 | | | | | 162 | | | | 162 | 486 |
| Rental dumpster | 178 | | | | | 178 | | | | 178 | 534 |
| *Other office related expenses* | | | | | | | | | | | - |
| Internet | | | | 100 | | | | 100 | | | 200 |
| Phone lines+BB | 250 | | | 546 | | 250 | | 546 | | 250 | 1,843 |
| Long distance / conferences | 150 | | | 100 | | 150 | | 100 | | 150 | 650 |
| Courier services | 200 | | | 200 | | 100 | | 200 | | 200 | 900 |
| Office supplies | 100 | | | 100 | | 50 | | 100 | | 50 | 400 |
| Maintenance copier (copies) | 200 | | | | | 200 | | | | 200 | 600 |
| Cleaning services | 451 | | | | | 451 | | | | 451 | 1,354 |
| American express | 2,000 | | | | | 2,000 | | | | 2,000 | 6,000 |
| Bank & Payroll fees | 112 | | 112 | | | 112 | 112 | | | 112 | 559 |
| Lock box - Wachovia | 600 | | | | 600 | | | | 600 | | 1,800 |
| Data backup | 650 | | | | | | | | | | 650 |
| Other miscellaneous | - | | | - | - | - | | | | | - |
| Maintenance and repair | 1,350 | - | | | | | | | | | 1,350 |
| **Manatee County Tax Collector** | 1,800 | | | | | | | | | | 1,800 |
| **Income tax returns (FY09)** | | | | | | 2,500 | | | | | 2,500 |
| **Legal and Assignee** | - | | | | 25,000 | | | | | | 25,000 |
| **Winding - up** | | | | | | 50,000 | | | | | 50,000 |
| **Insurance (Qrtly)** | | | | | 12,000 | | | 850 | | | 12,850 |
| Master control | | | | 8,245 | | | | | | | 8,245 |
| Utilities | | 5,000 | | | | | 5,000 | | | | 10,000 |
| **HAE US OPERATIONS in US $** | 25,144 | 5,000 | 15,998 | 16,380 | 40,777 | 69,917 | 20,008 | 7,225 | 12,517 | 7,787 | 220,751 |



HAE Confidential and Proprietary

100127 Cash flow forecast HAE operations 2010 without Aldina