UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                         Chapter 11

HAEMACURE CORPORATION,                         Case No. 8:10-bk-00359-KRM

Debtor.
_____/

ORDER GRANTING DEBTOR'S EMERGENCY MOTION FOR ENTRY OF
AN ORDER (I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH
THE SALE OF SUBSTANTIALLY ALL OF ITS ASSETS, (II) ESTABLISHING
PROCEDURES FOR THE ASSUMPTION AND/OR ASSIGNMENT BY THE DEBTOR
OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (III)
APPROVING MINIMUM OVERBID AMOUNT AND AN EXPENSE REIMBURSEMENT
AMOUNT, (IV) APPROVING FORM AND MANNER OF NOTICE OF BIDDING
PROCEDURES, AND (V) SETTING OBJECTION DEADLINES

THIS CASE came on for hearing before the Court on January 28, 2010, at 11:00 a.m. (the "Hearing"), upon the Debtor's Emergency Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of Its Assets, (II) Establishing Procedures for the Assumption and/or Assignment by the Debtor of Certain Executory Contracts and Unexpired Leases, (III) Approving Minimum Overbid Amount and an Expense Reimbursement Amount, (IV) Approving Form and Manner of Notice of Bidding Procedures, and (V) Setting Objection Deadlines [Doc. No. 34] (the "Procedures Motion").[1] In the Procedures Motion, the Debtor requested an expedited hearing for the Court to consider the entry of an order (i) approving bidding procedures in connection with the sale of substantially all of its assets to Angiotech Pharmaceuticals, Inc. or another Bidder (as defined below), (ii) establishing procedures for the assumption and/or assignment by the Debtor of certain executory contracts and unexpired leases to

---

[1] Unless otherwise defined herein, capitalized terms used herein shall have the meaning ascribed to such terms in the Procedures Motion.

which the Debtor is a party, (iii) approving a minimum overbid amount and an expense reimbursement amount in connection with such sale, (iv) approving the form and manner of notice of the bidding procedures, and (v) setting deadlines for objections to the sale.

An objection to the Procedures Motion was filed by Exportkreditnamnden, the Swedish Export Credits Guarantee Board ("EKN")[Doc. No. 45]. In its objection, EKN asserts that (i) Haemacure-Canada and Alfa Laval Tumba AB ("Alfa Laval") entered into that certain Conditional Sale Contract No. 05-0180 dated October 13, 2005 (as amended, the "Conditional Sale Contract") for the sale of certain equipment (the "Sarasota Equipment") by Alfa Laval to Haemacure-Canada, (ii) Alfa Laval filed financing statements perfecting its security interest in the Sarasota Equipment, (iii) Alfa Laval assigned its rights under the Conditional Sale Contract and perfected security interest in the Sarasota Equipment to EKN, and (iv) EKN filed financing statements perfecting its security interest in the Sarasota Equipment. Counsel for the Debtors and Angiotech announced on the record that they disputed the assertions of EKN that Alfa Laval and EKN had perfected their security interests in the Sarasota Equipment. For the reasons stated on the record, the objection filed by EKN is withdrawn without prejudice as set forth in decretal paragraph 15 below.

The Court finds that the Debtor has entered into a Purchase Agreement dated as of January 11, 2010 (the "Purchase Agreement"), with Angiotech Pharmaceuticals, Inc., a corporation incorporated under the laws of the Province of British Columbia (the "Purchaser"), providing for the sale by the Debtor to the Purchaser and the purchase by the Purchaser, pursuant to 11 U.S.C. §§ 363 and 365, of substantially all of the assets (the "Assets") of the Debtor for a purchase price of $1,500,000 (the "Purchase Price") plus the assumption of certain liabilities of the Debtor. The Purchase Agreement is attached as Exhibit A to the Procedures Motion.

The Court considered the Procedures Motion, together with the record and the arguments of counsel at the Hearing, and being otherwise duly advised in the premises, and for the reasons announced on the record at the Hearing, finds that the relief requested in the Procedures Motion is necessary and appropriate, and that the Procedures Motion is well taken and shall be granted in accordance with the terms and conditions set forth herein. Specifically, the Court finds that it would be in the best interest of the Debtor, its creditors and its estate that an orderly procedure for the selection of the highest and best offer for the sale of the Assets be established. The Court thus finds that it is appropriate to provide other prospective purchasers with the opportunity to submit competing bids, such that notice of the proposed sale of the Assets to the Purchaser shall be sent to all parties that were notified pre-petition and post-petition by the Debtor or its agents of the potential opportunity to acquire the Assets and all parties that have expressed interest to the Debtor or its agents in acquiring the Assets (collectively, the "Bidder List"). The Court also finds that it is appropriate to require any such prospective purchasers to comply with certain requirements in connection with the submission of competing bids, and that the bidding procedures proposed by the Debtor, as set forth in the Procedures Motion, are reasonable. The Court further finds that it is appropriate under the circumstances to approve an expense reimbursement amount and a minimum overbid amount as set forth below. The Court also finds that it is appropriate to establish deadlines for the filing and service of written objections to the Sale Motion (as defined below) and the sale of the Assets to the Purchaser as set forth in the Purchase Agreement.

The Court also finds that it is appropriate that, upon the filing of the Assignment Motion with the Court, notice of the proposed assumption and/or assignment of any Contract to the Purchaser be sent to each lessor or other party to any Contract to be assumed and/or assigned to the Purchaser

(collectively, the "Contract Parties"). The Court finds that it is also appropriate to require the establishment of a deadline for the filing and service by the Contract Parties of written objections to, and/or the assertion of any cure claims, defaults or any other claims against the Debtor in connection with, the proposed assumption and/or assignment of any Contract to the Purchaser.

The Court finds that the Procedures Motion and the notice of the Hearing on the Procedures Motion were served upon (i) the Purchaser and its counsel, (ii) the Office of the United States Trustee, (iii) the parties set forth on the Local Rule 1007(d) Parties in Interest List for this Chapter 11 case, and (iv) all creditors of the Debtor. The Court finds that notice of the Procedures Motion and the Hearing to creditors and other parties in interest was sufficient, that it complied with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court, and that the parties have proceeded in good faith.

ACCORDINGLY, IT IS ORDERED, ADJUDGED AND DECREED that:

1. The Procedures Motion is GRANTED to the extent set forth hereinbelow.

2. The Debtor or its agents shall, within two (2) days from the date of this Order, serve a copy of this Order, by United States first class mail or electronic mail transmission, to (a) all parties on the Bidder List, (b) all Contract Parties, (c) all parties listed on the Local Rule 1007(d) Parties in Interest List for this case, and (d) all creditors of the Debtor, and thereafter file a certificate of service with the Court.

3. By no later than two (2) business days after the date of this Order, the Debtor shall file with the Court (a) a motion to approve the transactions contemplated by the Purchase Agreement (the "Sale Motion"), which Sale Motion shall seek the Court's entry of the Sale Order (as defined in the Purchase Agreement), including approval of the Purchase Agreement and of the Debtor's

performance under the Purchase Agreement consistent with the terms, conditions and dates set forth in this Order, and (b) a motion for authority to assume and/or assign the Contracts to the Purchaser (the "Assignment Motion"). The Debtor shall serve the Sale Motion and the Assignment Motion on all parties set forth on the Local Rule 1007(d) Parties in Interest List and all creditors of the Debtor, and thereafter file a certificate of service with the Court.

4. The Debtor or its agents shall promptly serve a copy of the Purchase Agreement, the Sale Motion, and the Assignment Motion, by United States first class mail or electronic mail transmission, to all parties on the Bidder List and to the Contract Parties, to the extent not already delivered, and the Debtor shall thereafter file a certificate of service with the Court.

5. A hearing (the "Sale Hearing") to consider approval of the Sale Motion and the Purchase Agreement (including that it is the highest and best offer for the Assets) and the Assignment Motion and to consider any timely filed objections thereto, as well as any Bids (as defined below), shall be held before the Honorable K. Rodney May at the United States Bankruptcy Court, Courtroom 9B, Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Tampa, Florida, on **March 3, 2010, at 3:30 p.m.** immediately following the Auction. The Sale Hearing may be adjourned and/or continued in open Court from time to time without further notice.

6. The Court approves the following procedures (the "Bid Procedures") for the submission and consideration of any written competing bid ("Bid") by any competing bidder ("Bidder") for all or any of the Assets:

>   (a) Any Bidder desiring to make a Bid for the Assets shall deliver the Bid, by electronic transmission, to counsel to the Debtor, Charles A. Postler, Esq., Stichter, Riedel, Blain & Prosser, P.A., 110 E. Madison Street, Suite 200, Tampa, Florida 33602 (cpostler@srbp.com), **by no later than 12:00 noon (Eastern Standard Time) on March 1, 2010** (or such later date agreed to by the Debtor) (the "Bid Deadline"). Counsel to the Debtor shall file each such

5

Bid with the Court by 5:00 p.m. on March 1, 2010 and simultaneously serve each such Bid on the following parties by facsimile or electronic mail transmission or the Court's CM/ECF system: (i) Haemacure Corporation, Attn: Gilles Lemieux, c/o 215 Redfern Avenue, Suite 100, Montreal, Quebec, Canada H3Z 3L5 (Fax No.: 514/282-3358); (ii) counsel to the Purchaser, G. Christopher Meyer, Esq., Squire, Sanders & Dempsey, L.L.P., 4900 Key Tower, 127 Public Square, Cleveland, Ohio 44114 (Fax No.: 216/479-8780); (iii) the Office of the United States Trustee, Attn: Theresa Boatner, Timberlake Annex, 501 East Polk St., Suite 1200, Tampa, Florida 33602 (Fax No. 813/228-2303); and (iv) counsel to any committee appointed in this case.

(b) **By no later than 5:00 p.m. (Eastern Standard Time) on March 2, 2010**, the Debtor shall file a notice with the Court of the Bids received by the Bid Deadline (including the Purchaser's offer in the Purchase Agreement), which notice shall set forth the name of each Bidder, the Assets offered to be purchased, and the purchase price for the Assets. The Debtor will serve such notice, by facsimile or electronic mail transmission or the Court's CM/ECF system, on the parties listed in subparagraph (a) above and counsel to all Bidders.

(c) Prior to receipt by a prospective Bidder of any information (including business and financial information and access to the Debtor) from the Debtor, each such Bidder will be required to execute a confidentiality agreement in form and content acceptable to the Debtor, to the extent not already executed.

(d) A Bid shall include the following:

    i) A copy of the initial written purchase offer in the form of an asset purchase agreement, executed by such Bidder, in substantially the form of the Purchase Agreement (the "Bidder's Agreement"); provided, however that any Bidder's Agreement which contains terms different from the Purchase Agreement must be black-lined to show any changes made by such Bidder to the form of the Purchase Agreement, and must be signed by such Bidder and be subject to acceptance by the Debtor solely by its execution thereof and necessary Court approval. The Debtor may accept modifications to the Purchase Agreement as submitted by a Bidder who otherwise complies with the Bid Procedures if the Debtor determines, in the exercise of its business judgment, that the proposed modifications result in a higher and better offer for the Assets. The Debtor shall promptly furnish a copy of the Purchase Agreement in Microsoft Word format to any Bidder requesting a copy.

6

ii) A statement that specifically sets forth the extent to which the Bid is higher and better than the offer set forth in the Purchase Agreement.

iii) A designation of any executory contracts or unexpired leases such Bidder desires the Debtor to assume and/or assign to it (the "Designated Contracts").

iv) A purchase price which is cash only (unless otherwise agreed by the Debtor).

v) A designation of those liabilities of the Debtor such Bidder intends to assume.

vi) Relevant background and financial information reasonably satisfactory to the Debtor (including without limitation the latest available audited and unaudited financial statements) demonstrating the Bidder's financial ability to close and to consummate an acquisition of the Assets, such as (1) evidence of the Bidder's ability to assume or satisfy the terms and obligations of the Bidder's Agreement, pay the purchase price provided for therein and provide adequate assurance of future performance as to any Designated Contracts pursuant to Section 365 of the Bankruptcy Code, (2) an unconditional lending commitment from a recognized financial institution or cash sources in the amount of the Bid, (iii) a letter of credit from a recognized financial institution in the amount of the Bid, and/or (iv) proof of cash on deposit exceeding the amount of the Bid.

vii) A good faith deposit in immediately available funds in the amount of $150,000 (the "Bid Deposit"), which shall be made payable to and delivered to Stichter, Riedel, Blain & Prosser, P.A. ("SRBP"), counsel to the Debtor, by no later than the Bid Deadline (or such later date agreed to by the Debtor). The Bid Deposit shall be deposited into a non-IOTA interest-bearing trust account maintained by SRBP. Such Bid Deposit will be non-refundable to the Bidder in the event such Bidder's Bid is approved by the Court at the Sale Hearing as the highest and best offer and such Bidder fails to close on the purchase of the Assets for any reason. The Bid Deposit will be applied against the purchase price at the closing. Within five (5) days following the entry of the Sale Order, SRBP will return the Bid Deposit (inclusive of any earned interest) of any Bidder (except the Backup Bidder) that is not selected as having the highest and best offer at the Sale Hearing.

(e) An auction ("Auction") to consider any competing bids in respect of the Assets will be held at the Court on **March 3, 2010, at 3:30 p.m.** immediately preceding the Sale Hearing. Prior to the Auction, the Debtor will inform the Court of the differences between any Bids and the Purchase Agreement, and recommend to the Court the offer that the Debtor considers to be the highest and best offer to the Debtor's estate for the Assets, after taking into account all aspects of the Bids and the Purchase Agreement (including, without limitation, the amount of the purchase price, the method and timing of the payment of the purchase price, conditions to closing, the time for closing, the representations, warranties and covenants to be provided by the Debtor, and the indemnification obligations of the Debtor). All potential Bidders or their authorized representatives must be present at the Auction and the Sale Hearing. The Court will determine the highest and best offer at the Sale Hearing.

(f) The initial Bid must provide for a purchase price for the Assets of $100,000 above the $1,500,000 Purchase Price offered by the Purchaser plus the amount of the liabilities of the Debtor to be assumed by the Purchaser. The Purchaser shall be entitled to submit further bids at the Auction. All subsequent higher Bids above the initial Bid (including any subsequent Bid which may be made by the Purchaser, subject to the provisions of paragraph 7 below) must be in incremental increases of at least $50,000 and be payable in cash (the "Overbid Amount").

(g) Any Bid shall not be contingent upon receipt of financing or due diligence past the Bid Deadline.

(h) Any Bidder shall provide satisfactory evidence (as determined by the Debtor) that it is (i) financially able to consummate the transaction contemplated by such Bid and (ii) able to consummate the transaction on the date and on the terms contemplated by the Bidder's Agreement.

(i) Any Bid shall not contain any conditions precedent to such Bidder's obligation to purchase the Assets and assume and perform any liabilities to be assumed, other than as may be included in the Purchase Agreement.

(j) Any Bid shall set forth (1) any applicable governmental, regulatory, or other approvals and any applicable consents that would be required to be obtained were the Bidder to be the successful Bidder, (2) all actions taken to obtain such approvals or consents, (3) any approvals or consents obtained, and (4) the Bidder's best estimates as to the likelihood and timing of any such approvals or consents.

(k) If any Bid does not conform to all of the requirements set forth above, such Bid will not be considered by the Court or be admissible at the Sale Hearing, unless otherwise agreed by the Debtor in its sole discretion or otherwise ordered by the Court.

(l) The Court shall register the second highest Bid and Bidder (the "Backup Bidder"), whose Bidder's Agreement shall be a binding contract with the Debtor and shall close in the event the successful Bidder fails to consummate the acquisition of the Assets in accordance with the provisions described above and in the Sale Order. Any closing with the Backup Bidder shall occur within five (5) days of notification that the successful Bidder failed to close.

(m) In the event a Bidder (including the Purchaser) is the winning Bidder (as approved by the Court), and such winning Bidder fails to close on the transaction in accordance with the Bidder's Agreement (or the Purchase Agreement in the case of the Purchaser), the Debtor may keep the earnest money deposit of such winning Bidder as set forth in the Bidder's Agreement (or the Purchase Agreement in the case of the Purchaser) and reserve the right to pursue all available remedies, whether legal or equitable, available to the Debtor.

(n) Except for the Purchaser, no Bidder submitting any Bid shall be entitled to any expense reimbursement or any break-up, termination or similar fee or payment.

7. This Order is without prejudice to the rights of the Purchaser to exercise its credit bid rights under Section 363(k) of the Bankruptcy Code as to any of the Assets that the Purchaser asserts constitute its collateral, including with respect to any overbid amounts. Based on the budget of expenditures prepared by the Debtor, the Purchaser estimates that by March 3, 2010, the aggregated amount of its secured claim, including principal and accrued interest, will be approximately $3,450,000. Any bid by the Purchaser that exceeds its credit bid rights shall comply with the overbid procedures set forth above. By no later than the Bid Deadline, Angiotech shall file a notice with the Court setting forth an updated calculation of its secured claim for purposes of determining its credit bid rights at the Auction. Notwithstanding anything to the contrary contained in this Order, the

Purchaser shall not be required to deliver any Bid Deposit or to comply with the Bid requirements specified in Paragraph 6(c), (d) or (h).

8. Any creditor or other party in interest objecting to the Sale Motion or the sale of the Assets to the Purchaser must file written objections with the Court and serve same upon counsel to the Debtor and the parties set forth in Paragraph 6(a) above so as to be actually received by all such parties **by no later than 12:00 noon (Eastern Standard Time) on March 1, 2010**. Any such objection shall set forth with specificity the grounds for such objection. Any creditor or other party in interest not timely filing such written objection shall be conclusively deemed to have waived any objection it may have to the sale of the Assets to the Purchaser or the selection of the Purchaser's offer as the highest and best offer for the Assets, without prejudice to the Court's authority to conduct an auction between the Purchaser and qualified Bidders at the Sale Hearing. Any timely filed objections to the Sale Motion or the sale of the Assets to the Purchaser will be heard at the Sale Hearing, as well as any objection to the offer of any other Bidder (which objection may be made at the Sale Hearing).

9. Any lessor or other party to any Contract to be assumed and/or assigned to the Purchaser that objects to, and/or asserts any cure claims, defaults or any other claims against the Debtor in connection with, the proposed assumption and/or assignment of its Contract must file with this Court, **by no later than 12:00 noon (Eastern Standard Time) on March 1, 2010**, any objection to the assumption and/or assignment of its Contract and/or assertion of claim or default (the "Objection"), which Objection shall set forth:

    (a) the specific grounds for such Objection;

    (b) any and all defaults of the Debtor (whether monetary or non-monetary) that it alleges are in existence under such Contract and, (i) if such alleged defaults are monetary, the

nature of such monetary defaults (including the date and amount of any payment allegedly due under the Contract) and cure amounts, if any, due and owing by the Debtor pursuant to 11 U.S.C. §365(b) and, (ii) if such alleged defaults are non-monetary, the nature of such non-monetary defaults and the amount of money or the type of action required to cure such non-monetary defaults; and

      c)     any and all claims of any nature whatsoever against the Debtor.

10. Any lessor or other party to any Contract who fails to timely file a written Objection to the proposed assumption and/or assignment of its Contract as set forth above shall be conclusively deemed to have waived any such Objection and to have consented to the assumption and/or assignment of its Contract to the Purchaser. Any lessor or other party to a Contract not specifying any default or claim as required herein shall be deemed to have conclusively acknowledged that no default or claim exists under any such Contract.

11. Any creditor, any lessor or other party to a Contract to be assumed and/or assigned to the Purchaser, or any other party in interest filing an Objection to the Assignment Motion must serve the same upon counsel for the Debtor and the parties listed in Paragraph 6(a) above in a manner designed to assure actual receipt by such parties by the Bid Deadline.

12. On account of the Purchaser's time, expenses, fees, costs, trouble and lost opportunity costs in respect of the transactions contemplated by the Purchase Agreement, the Court hereby approves an expense reimbursement amount for the Purchaser in the amount of $50,000 (the "Expense Reimbursement Amount"), provided that the Purchaser submits its opening bid (as set forth in the Purchase Agreement) at the start of the Auction with no contingencies and is not the winning Bidder at the Auction. The Court finds that the Expense Reimbursement Amount is fair and reasonable under the circumstances. The Debtor shall pay the Purchaser the Expense Reimbursement Amount in the event a sale of all or substantially all of the Assets pursuant to an

Alternative Transaction (as defined in the Purchase Agreement) is agreed to by the Debtor within twelve (12) months following the date of the Purchase Agreement, and unless such sale has resulted from the fact that (i) the Purchase Agreement has been terminated in accordance with the terms of Section 8.01(a) of the Purchase Agreement or (ii) the Debtor has terminated the Purchase Agreement under the terms of Section 8.01(c) of the Purchase Agreement. The Debtor may defer such payment until the closing of the Alternative Transaction, for a period not to exceed forty-five (45) days. The Debtor's obligation to pay the Expense Reimbursement Amount shall survive termination of the Purchase Agreement and shall constitute an administrative expense in this case (which shall be a super-priority administrative expense claim senior to all other administrative expense claims).

13. The Court also finds that the Overbid Amount of $50,000 is reasonable under the circumstances and approves the Overbid Amount in connection with any Bids to purchase substantially all of the Debtor's Assets.

14. The granting of the Procedures Motion as set forth herein shall not constitute the approval of any sale of the Assets or any term or provision of the Purchase Agreement, except with regard to the Expense Reimbursement Amount and Overbid Amount specifically approved herein. All parties reserve all rights and defenses with respect to the Sale Motion and the Purchase Agreement.

15. The objection to the Procedures Motion filed by EKN is withdrawn without prejudice to its rights to object to the sale or other disposition of the Sarasota Equipment and further provided that this Order shall not constitute a determination as to the extent, validity, perfection, priority or enforceability of the liens and claims as to the Sarasota Equipment asserted by EKN (either for itself or on behalf of Alfa Laval). Nothing in this Order shall preclude or restrict the Debtor, Haemacure-

Canada, Angiotech, or any committee or trustee appointed in this case from challenging the extent, validity, perfection, priority or enforceability of the liens and claims as to the Sarasota Equipment asserted by EKN (either for itself or on behalf of Alfa Laval) or seeking approval of the sale or other disposition of the Sarasota Equipment over the objections of EKN.

16. To the extent there is any inconsistency between the provisions of this Order and the terms of the Purchase Agreement, the provisions of this Order shall control.

**DONE** and **ORDERED** in Chambers at Tampa, Florida, on ___February 02, 2010___

_____
K. RODNEY MAY
United States Bankruptcy Judge